for the appellant Pete Skrill with the State Appellate Defender's Office for Kenneth Neal, appellant Skrill? Assistant State Attorney Brian Hodes on behalf of the people of the state of Illinois. Okay, I can assure you that we've read the briefs and the pertinent portions of the record, so behoove you to get to your strongest point first. Any time you're ready, Mr. Skrill. May it please the court. The honor's issue today is whether the police had probable cause to arrest Kenneth Neal for soliciting the sale of narcotics on a public way based on the fact that they heard him shout the word blows. I think it was taken in the officer's testimony at the suppression hearing as true, it is clear they did not have probable cause to arrest. Therefore, the trial court erred when it denied defense counsel's motion to suppress the evidence. In this case, the sole basis for the arrest was hearing this word blows shouted at passing traffic. The officers had no information about Mr. Neal or anyone else selling drugs on that street. There was no information that this was a high crime or high drug area. They didn't witness any of the other indicia of typical drug cases with hand-to-hand, or they didn't even witness him speak to anyone in particular. This was solely shouting a word as cars were driving by. The officer testified, though, that word means heroin, right? He said that that word can mean heroin. Yes, exactly. That's what it means. So would it be okay, hypothetically, if Mr. Neal was standing out there screaming, heroin for sale, heroin for sale. Would that be okay? I think we have a completely different case, Your Honor, in the sense that... Well, would you concede then that heroin for sale, screaming that out, would be illegal and violative of the ordinance at question and provide probable cause? I think if someone was making an explicit offer to sell illegal drugs to people, that would, I mean, probably be a much more... But we don't have that in this case. I think we have two things about the word blows that are ambiguous in this case. First of all, of course, we know that blows, the officer testified, can mean heroin, but that doesn't take away the fact that it has many other meanings. And also, the fact that he's yelling blows doesn't necessarily mean we don't know, you know, he's just yelling. He could be clowning around. He's with friends. Who knows exactly what the context? And I think that's the whole problem here, is because the officer did not do any surveillance, any investigation at all, we have no context to place this word in. I mean, you know, I think the state's brief says that an officer's knowledge of this in Chicago means sale of heroin. But that's a pretty broad, you know, thing to say. In any city of Chicago, if someone says the word blows, they're going to be arrested? You're screaming in the street corner, absolutely. That's exactly what that means. It means heroin for sale. And every policeman and everybody I'd suggest to you who kind of lives in the city or drives through the city or has any contact with the city would know that. You know, just like rocks means crack cocaine. That's what's done. That's what they call it. Everybody calls it. And again, I don't want to be snotty about it, but I ask this question not just in a figurative sense, are we required to know nothing about the word blows when we take the bench? Or is there some rule out there of law that requires us not to know that blows means heroin? Of course not, Your Honor. But once again, we all know that there's more meanings to that word. And how do we know in this context what was going on if the officer has no context to put it in? I mean... Well, the officer certainly did. He knows it's heroin, just as I know it's heroin. He knows it can be heroin. He knows it can be heroin. It doesn't mean... If I go down the street and an L is driving by and I'm heard yelling the word blows, can I be subject to a full-blown arrest? Not surveillance, not reasonable suspicion. Terry, just straight to the most intrusive contact with a citizen a police officer can have is a full-blown arrest. Was this issue addressed in the prior case, was it Phillips or was it Chicago v. Powell? Well, Powell did not involve a motion to suppress or probable cause or anything. It dealt with a motion to dismiss the indictment, an overbreath challenge, and a vagueness challenge. And I think the ordinance is, of course, constitutional. But I think if you look at, say, People v. Lee, the Supreme Court, where they dealt with a very similar ordinance in Joliet, the ordinance I think... One of the things that makes it relevant is that the ordinance also prohibited inchoate activity. It's basically made it a crime to loiter in a public area manifesting a purpose to engage in drug activity. So I think in both cases we have a very, you know, kind of vague ordinance that outlaws anyone intending to engage not in drug activity. Does solicitation have a different meaning under the criminal code than it has under the city ordinance? You know, Powell dealt with that a little bit and I don't necessarily think it has a different meaning. I mean, the solicitation statute says you commit solicitation with the intent that offense be committed, you know, command, encourage, request another to commit an offense. I think Powell also cites that and also discusses some of the other ways that we commonly mean solicit, you know, to plead, implore, urge, incite. The city ordinance goes to the individual soliciting himself, whereas the code goes to solicitation trying to get someone else to get involved in a crime. Well, but I think in this case that what's being alleged here is he was trying to get someone else involved in a crime. I don't necessarily think there's too much of a difference there. But I do think it's significant that we didn't even see him speak to anyone. The officer didn't even see him speak to anyone in particular. There was no, you know, it never even got to the point where people If you're selling heroin or crack, you have to solicit people so they'll know which alley to go into or which person to pull up to. And you have to do that by screaming it on the street corners or in an alleyway. And that's how it's been done since time immemorial. The city police department makes many tens of thousands of arrests under identical circumstances, which we don't see many because frankly, they're really good appeal. But that's exactly how it works. And it says work for Well, I understand that, you know, someone, it seems like in all the cases the state sites on this, there's no case holding that this alone rises to the level of probable cause to arrest. And I think that's what the problem here is. Just because the police have a suspicion doesn't relieve them of the requirements that they corroborate or at least confirm or something else. I mean, in every case cited by the state, there's like someone's yelling rocks or blows or some slang term. They set up surveillance. They observe what's going on. They see hand-to-hand transactions. They send somebody undercover. Chicago v. Powell didn't do that. The one case we dismissed, and I haven't been on Powell, as well as Supreme Court Justice Tice and Justice Greiman, they were all standing yelling blows. I mean, I think all of them. The one case we threw out was a guy named Davis who was yelling blows, but that complaint against him didn't say what that meant. And here, so we said in discussing this, they were arrested for yelling blows. Extrinsic evidence would be necessary in order for the defendant to determine the reason for his prosecution. So in this case, again, you're not attacking the complaint. You're attacking the sufficiency of the evidence. There was extrinsic evidence, meaning the officers testified blows means heroin for sale, right? There was that testimony, yes. But I think if you look in Powell, as well, the one that was dismissed was dismissed because they didn't specify, which is a recognition that blows is an ambiguous term. You know, I think that there's a, you know, this, the Fourth Amendment is going to require a balancing of legitimate law enforcement needs with privacy interests. What privacy interests does somebody have for yelling heroin for sale on a street corner? Privacy interests of someone who has a right to not be arrested until the officers have more than the uttering of one ambiguous word. I mean, I think it's significant that states aren't able to cite any case where this standing alone is enough. That's why it's here, right? Well, sure. I think so. But I think that, um, that this would really, I mean, if you look at also people who believe the Supreme Court case I cited, they talk about how probable cause is an objective, not a subjective standard. And sure, the officer's subjective knowledge is relevant. It's not determinative. And one of those, one of the reasons for that is because we need uniformity in Fourth Amendment law. Um, and so now when you have just an ambiguous word uttered without more, without putting it into any context, um But wasn't the officer the only one to testify? Did he have 15 years experience, two and a half or something like that in a current assignment? And in his interpretation, it blows, blows, which if I were a jury I'd listen to, it meant heroin. Yes, Your Honor. If the defense didn't put on anything that says it's ambiguous, then that's, that's what the officer's testimony. Well, I think we can take judicial notice of the fact that blows, obviously, is, has other meanings, um, than heroin. It's an English word that But there's nothing in the transcript that says that. Well, the, actually, in the motion to reconsider the, um, denial of the motion, the, um You argued there could be a bunch of angels standing on the court, as one of your, um, examples. But is that evidence, then, we should consider, that that is evidence, your argument? That blows can have another meaning, or? Yeah. Yes, Your Honor, I believe that, in fact, defense counsel at trial, in his motion to reconsider, like, he pointed out various definitions of blows. But is that evidence? I'm saying, is that evidence? Well, I think it's some Otherwise, I'm stuck with the evidence I heard from the officer for 15 years of experience that blows means heroin. Well, I think that, okay, if you look at, um, say, take people v. Rainey. In that case, the officer testified as well. In his experience, people furtively putting something in their mouth, and his means are hiding drugs, especially in that case. I understand your argument. One other thing bothered me on, on your brief. Yeah, your brief. Uh, you say the State presented no evidence that Neil had shouted blows in a high crime or high drug area. What's the difference with that? Well, because I think that would be another indicia of something that the police would have that would further bolster, uh, suspicion that drug sale, an attempt drug sale was taking place. If it's an area known for drug sales, and someone's there, that's, I think that's what's unique about this case, is we have an arrest based solely on the uttering of one word. And, as I was pointing out in Lee, where they talk about the need for uniformity, I mean, how many slang terms are there for drugs? They're, they're countless. I mean, if you look at, if you read cases in, in the city, there's a lot of different terms. So, now, without putting it into context, I think that this goes way too far in giving the officers almost unfettered authority to arrest. If I'm downstairs yelling over the L, and they hear me yell, any word that can be construed as a slang term for drugs, now, they're not even going to have to, you know, question me or anything. It's straight to the station for a full-blown arrest and custodial search. I think that goes much farther than the Fourth Amendment. I mean, I don't know. Well, that's not, isn't that the issue? So, the, the constitutionality of the, it seems to me, most of the argument goes that way. It's like, geez, it's just overbroad, it's not fair, and that, we did that 11 years ago. And, so, now, they're making lots and lots of arrests for this based on Chicago versus Powell. And, I guess, the issue in front of us today is, what is the sufficiency, or what's the standard for sufficiency of yelling blows or rocks, what it's going to be? And, your argument is that, well, yelling blows or rocks shouldn't be enough. And, it could be rocks, it could be a paleontologist, I guess, at 43rd and Federal. But, I don't think he would be. I think they're selling crack, and they're selling heroin. And, so, then, the argument goes, is that sufficient? And, the answer is, yeah. What more could you possibly have? I think you could have all the other indicia of drug sales that we see, and all the other cases that I've been able to find. I mean, I did a lot of research, state, I'm sure, as well. And, there's not one case where this little is held. I don't know, you know, and, like I said, I don't think Powell, there's nothing in the decision in Powell that deals with what exactly were the circumstances of the arrest. And, Powell does say you have to have the specific intent to commit this crime. And, so, you know, I think, you know, the ordinance does say, you know, words, symbols, gestures. But, I think it has to be something more than one ambiguous word. And, you said, you know, 43rd and Federal. We have no information that this person or this area has anything to do with drug sales. So, I don't think it's fair to... It could be almost anywhere in Chicago. I mean, literally, almost anywhere. That's what I'm saying. I think that's... I'm telling you not to loop. But, we've caught guys on Wabash yelling it. So, I mean, it's four blocks away. Gold Coast may sell a lot. Sure. But, I think that when you don't have any way to put it into context, if you have any other thing, then I don't think that you have probable cause. I mean, I still don't think that if one of us goes downstairs and yells a word that happens to be a drug word, a slang, that means the officer has the right to do a full-blown arrest. You know, I think it gets back to the uniformity that Lee discusses. I mean, we cannot just go on the officer's subjective knowledge without anything else that this is a slang term for drugs. Anything else? No, Your Honor. I would like to... You have time for reply. Okay. Thanks. State. May it please the Court, Assistant State's Attorney Brian Hodes on behalf of the people of the State of Illinois. It was about 11 o'clock on January 4th, 11 o'clock in the morning. The two officers were in an unmarked car driving down Madison Street. When they got near the corner of 2900, which I believe is the Francisco intersection, they saw and heard three people, not one, yelling, blows, blows. The arresting officer who immediately alighted from the vehicle, an officer Malkowski had, I believe, 15 years of experience and had conducted, as he said, hundreds of narcotics arrests. What he understood was that in this situation, when these people were, and they were all arrested, when they were standing out there yelling blows, blows to passing cars and passengers, they were soliciting heroin. This, the standard for this is simply whether that was, he had a reasonable belief. He didn't have to know, certainly at that moment, that that's what they were doing. And I guess he could have even considered the possibility, as long as it was slight, that the word might not actually mean that. But... Did the officer testify that this was a high crime area and that he had personal knowledge that drugs were being sold in this particular area on this particular corner? Those questions, no, those questions never came up at the suppression hearing. The defense called one witness to the suppression hearing. The questions were asked. They were never asked. But if they were asked, do you think that would make it better to show probable cause? I mean, yeah, I mean, but to show probable cause, what we had to show was more likely than not, that the officer's belief was reasonable, more likely than not. It's not the same standard of proof, and this is something that I think gets confused in the briefs, as that he actually committed the crime. We have to step inside the officer's heads, but we have to do it through a reasonable officer, and determine whether, under the circumstances, he properly thought it was more likely than not that they were selling heroin, or selling narcotics, to be more specific with the statute. The stat...the ordinance, excuse me. The ordinance specifically prohibits words, gestures, and its...insoliciting. It speaks of them in pieces. It doesn't say you need a combination. You could have any one of these things to do it. So the officer, whose ears we must hear this through, heard, as Your Honor stated earlier, heroin, heroin, essentially. That's how he translated it. Now, maybe...and these people were standing out there screaming it, at cars and buses. I don't know...I don't think that there was much ambiguity in that at all. And if there was, it certainly didn't rise...it didn't make what he did even remotely unreasonable, which is the hallmark of the Fourth Amendment right, is to protect people from unreasonable searches and seizures. The statute, whose constitutionality has been affirmed, clearly prohibits solicitation by words. Standing out there yelling what is essentially heroin, heroin, violates the statute. Therefore, the officer acted properly. With respect to whether or not he should have waited and done more, Powell specifically points out that the purpose of the statute, the ordinance, excuse me, is to rid the streets of drug dealers and prostitutes and states that if an actual actually completed the illegal business which he solicited, there would be no need to charge him with the ordinance. The time to act under Powell, which I believe cited a case called Lewis, was when he saw and heard the offense being committed. And the offense was an inchoate offense, like bribery or conspiracy. He didn't have to wait until he consummated some sales or he had some physical stuff that suggested it. That was more than enough to give him the ample, reasonable, probable cause to arrest the defendant. I'm not too sure which is the nicest part of the city. But if I were down in the Gold Coast and yelled blows, blows, would that also subject me to arrest? I believe it could, yes. And how about down in Beverly? Same thing. I mean, the officer would have to drive by and see you and hear you screaming. I mean, this is three people standing on a corner screaming. There is some context to this. And we have to view it from that context, and we have to view it and hear it, I guess, through the officer's ears. This isn't a purely academic exercise, and that's always been the standard on motions to suppress. I believe the Ornelas case that provides the entire framework for analyzing motions to suppress acknowledges that and even talks about the importance of recognizing the officer's privileged position, as it were, to understand what's going on and that his expertise or her expertise is not something that can be kind of assumed away by saying hypothetically, oh, what he saw might have also meant this or what he heard might have also meant that. We have to hear it through the ears of a reasonable officer under those circumstances. I think there's a wealth of case law that provides that heroin equals, I mean, blows equals heroin. And it's used the same way, as I believe I said in the brief, at a ball game as someone is standing there yelling, beers, beers. They're selling beer. This is the same thing, except it's heroin, and heroin is specifically prohibited by the municipal ordinance. This Court should consequently affirm, excuse me, would people respectfully request that this Court affirm the trial court's ruling and also for the reasons set forth aloud as well as in our brief. Thank you, Your Honors. Thank you, Mr. Jones. Mrs. Sgro? Reply briefly. I would like to reiterate that Powell dealt with dismissing the indictment. Like I said, there was no evidence about the circumstances of the arrest. I can assure you that if the arrest had been based solely on that word and I was a Powell counsel, I would have raised a probable cause issue. And also I think just the last thing I'd like to say, as noted in Lee, is the subjective knowledge of the officer is not sufficient. In Lee, the officers had a wealth of much more information about a person selling drugs, and in their experience they believed they had witnessed a drug transaction. Our Supreme Court said that is not enough, that the officer's subjective knowledge definitely needs more. And same with Rainey, where the officer testified after hundreds of arrests, his experience was that the placing of this in his mouth was how they hide drugs. Well, that's a relevant concern, but the fact that it was still ambiguous conduct meant that there was not probable cause to arrest. And in Marshall, they actually held that that wasn't even enough of a reasonable suspicion. So with that, unless you have any further questions, I would ask that you reverse the trial court's denial of the motion to suppress. Thank you, counsel. Thank you for the arguments and the briefs. This case will be taken under advisement.